Good morning. May it please the Court, my name is Puneet Afaryan and I'm representing Mr. Raul Chadha. At this time I would like to reserve three minutes for rebuttal. Mr. Chadha humbly requests this Court to remand his claim for asylum, withholding of removal, and CAT for further consideration. Specifically in regards to CAT, due to the fact that IJ failed to explain why Mr. Chadha was ineligible for CAT. In the present case, the IJ failed to make an explicit credibility determination. And therefore, Mr. Chadha's testimony should be deemed as the truth. Further, the IJ... Judge Goldberg Counsel, counsel, could you help me on the  Puneet Afaryan Yes. It looked to me perfectly plausible, and remember there's a substantial evidence standard, we don't get to decide the asylum case in chief. It looked to me perfectly plausible that the reason the police arrested him and beat him up and did all these bad things to him was not because they thought he was pro-Sikh, but he wasn't even a Sikh, but rather because they thought he could help them find the arms dealer who had stolen $50 million from the government. Yes, Your Honor. Why isn't that enough for the BIA? Your Honor, in this, during his second arrest, he was actually persecuted based upon Sikh militants that he went to university with. And so during his second arrest, it was that. And then during the first arrest, it was based on the fact that they associated him with Win Chadha. And as far as the nexus goes, which is what the IJ found, there was no link or nexus between the persecution he suffered and enumerated ground. As far as the political opinion goes, both Win Chadha and the Sikh militants were perceived to have anti-governmental, anti-nationalistic... Well, wait, there's a certain tension here. On the one hand, we give asylum to people who are persecuted by reason of political opinion. On the other hand, we deny asylum, even if they are to terrorists or people who aid terrorism. Supplying weapons is not like supplying pamphlets. Yes, Your Honor. Is it persecution for political opinion if they think what he's doing is supplying weapons? Well, the reason that it's persecution is because he did not do it. It's an imputed political opinion. They targeted him, especially in regards to Win Chadha, because of his common last name and the fact that he traveled a lot and he was from a higher economic standard. And if it was part of a legitimate criminal investigation, as the IJ had pointed out, then it should have gone through, he should have gone before a court of law, there should have been judicial proceedings. And his punishment... I'm thinking, suppose that I'm an arms dealer. We eliminate the middleman here. I'm an arms dealer. I sell a whole lot of machine guns to the Kalistan militants. That doesn't mean I have any political opinion. It doesn't mean I'm pro-Kalistan. It just means I'm pro-making the money. Now, if I buy the machine guns with my own money and I give them for free to the Kalistan militants, that tends to show that I have a pro-Kalistan political opinion. Your Honor, this court has held that family associations can give rise to imputed political opinion. And even though Mr. Chadha is not related to Win Chadha, the common last name was what targeted him. Yeah, but what's the evidence that the police thought your guy had any political opinion at all? It's based upon the second arrest that... Isn't really this come down to the second arrest? I mean, I have – maybe I share Judge Kleinfeld's skepticism, but it's hard for me to see how the first arrest can constitute persecution on the basis of imputed political opinion. It seems to me that the I.J. justifiably said they're looking for this guy as part of a criminal investigation, we're looking for evidence, and they made a mistake. Now, the second one is a different issue. The second one, they're asking about the arms dealer, but they're also asking about Sikh militants. Now, why do you think that that shows that they're imputing a political opinion to him? I mean, it's sort of a dual motive, if you will, or... Your Honor, I believe it's – since they tagged him for being associated with Win Chadha, they imputed the anti-governmental, anti-nationalistic opinion to him, and he was already targeted based upon that. And furthermore, his association with a social group, this court has held recently in the Thomas case that you can – a social group can include familial or clan relations, and again, due to his common last name, his economic status, and his frequent travels, he was targeted as associated with Mr. Chadha. So basically, you really are basing your imputed political opinion contention on the association with the alleged arms dealer, right? For the first arrest. And then for the second arrest, it was the – Mr. Gangandeep and the same university as he was, and they were designated as Sikh militants that lived abroad, and since he was traveling from abroad, they associated him with working with him, and they started questioning him and torturing him to get information about their whereabouts. Even if, arguendo, there was no link or nexus between the persecution Mr. Chadha received and an enumerated ground, Mr. Chadha is still eligible for removal relief under CAT. The IJ in this situation just gave a blanket one-sentence statement that he's ineligible without explaining why. The burden of proof standard can be met if the applicant is deemed credible and provides a credible testimony, which Mr. Chadha has. And evidence of past persecution can be the first factor in determining eligibility, and the IJ never addressed that. Furthermore, the IJ excused granting eligibility based on CAT, based on the fact of relocation, but he based his findings on flawed reasoning and reasoning contrary to the Ninth Circuit. If I may, I would like to read two sentences that he wrote in regards to habits on page 52 of the administrative record. The IJ stated, the respondent could internally relocate to another part of India. It appears that he is from a wealthy family in India. That was not done, and his mistreatment was not on account of political reasons. Therefore, the torture convention relief will be denied. The torture convention relief prohibits a signatory nation from returning or expelling an individual to a country where there's more likely than not a chance of him being tortured, and it's not based on political opinions of the individual. Furthermore, in the Neuro case decided by this Court, torture is of kind required to, by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for purposes of obtaining information or a confession. And in order to excuse relocation Why would he get tortured if he got a nice, went back, got a nice condo in Mumbai? Your Honor, this Court has held in Neuro that you can't just say that he can relocate and without an individualized analysis of the particular person. Okay, still, why? We don't just grade the IJ's papers. We look to see if there's substantial evidence on the record as a whole. Your Honor, there's... Why couldn't he just get a condo in Mumbai and not get tortured? Your Honor, the fact of the matter is that he was arrested at the New Delhi airport, and that it was a government, the whole government, it wasn't just a specific local government that was attacking him. So he was tagged by the Indian government due to anti-nationalistic and anti-governmental stances. Do you want to reserve some time for a comment, Your Honor? Yes. Thank you. Ms. Drucker. Good morning, Your Honors. Alison Drucker for the United States. I'd like to address both the withholding and the CAT issues that have been under discussion. First of all, concerning withholding, yes, there were two arrests. The first one at the New Delhi airport where a petitioner was only asked about a wind shada. And second, in the Punjab, where, as he said on page 82 of the administrative record, the police started off with the same thing, and only then they turned to this question about whether he knew other criminals who were also wanted by the police seek militants. Now, it's important to remember with withholding, because asylum is not in question here, because of the bar about the one-year requirement. Withholding, the petitioner's burden is higher than an asylum. He has to show that it's more likely than not that he would be persecuted. Now, what happened to him clearly was initiated by the desire of the police to pursue a legitimate criminal investigation of wind shada. And only in the Punjab and not in New Delhi was he asked in addition about these other criminals, and that was kind of an afterthought. In each case, the original focus was wind shada. Now, as already I think has been mentioned, I believe by you, Judge Kleinfeld, the petitioner is a Hindu, not a Sikh. That's pages 82 and 421 in the administrative record. He testified that he was never political at page 75, and also that his father was never political at 94 and 95. And this is a case about imputed political opinion. That's clear. So this is a case about imputed political opinion, and we're all agreed that he doesn't share the views of the Sikh militants, right? Yes, Your Honor. And there's also additional evidence in the record that suggests that, in fact, he didn't have well-founded fear on any ground, because the record shows that wind shada died in 2001. That's at page 110. Petitioner was able to leave India using his passport, pages 86 and 99, and he has an extended family in India, pages 74 and 75, and they apparently have had no problems with police. That's at 100. Counsel, back up to something for just a second. I've been wondering about the cat claim. Yes, Your Honor. And I asked, why couldn't he just go back, get a nice condo in Mumbai, and live happily ever after? The plaintiff's lawyer had a pretty good answer, which I understood basically to mean because he'd get busted at the Delhi airport when he landed, like he did last time. But if wind shada is dead, then maybe the reason to bust him to find out where wind shada is no longer exists, because shada's underground. Correct, Your Honor. Where's the record excerpt on wind shada's being dead? You said it, but I didn't write it. 110 of the administrative record. Thanks. Certainly. You referred to the Sikh militants as criminals. Where is that in the record? Well, they were presumably involved in terrorism. Where does that say that in the record? Your Honor, I'm not sure that it specifically does. I don't have a page I can cite you on that. Well, no, I mean, you used the word criminals, and now you're saying terrorists. I think the Sikh militant groups, which include those for political change, was the only thing I saw on the record. Do you have anything else? I'm sorry, I don't at this time. Okay. I'd like to say a little bit more about the cat question also. Also, the record supports the fact that, as I said before, that there was a difference in questioning between New Delhi and Punjab. He was only questioned about wind shada in New Delhi and not about Sikhs. But he was able to leave from New Delhi on his passport, and that he spent at least some time in New Delhi. It's not completely clear from the record how long, but he said that he stayed with an aunt and uncle. That's at page 85. For some period between his release on June 15th of 2000 and when he left India in July of 2000. What is, in his second arrest, when, if ever, did his Sikh roommates at college come up, and what was the nature of the inquiry, and what ensued? Well, I don't think there are a whole lot of details. He was already in the custody of the police in the Punjab. They started, as I said, asking him about wind shada, and then at some point they asked him about whether he had contacts with these individuals who apparently had gone to the same college, but I think were several years ahead of him in college. And I guess he told them that, you know, he was not in contact with them at that point. I think that was pretty much all that the transcript covered. What do you make of the testimony, his testimony, that the police were still searching for him after he left the country? He says, and they still go to my house asking for me. Yeah. I think that's, you know, some evidence that is in the record, but as Judge Kleinfeld has said repeatedly, the question here for this Court is whether there is substantial evidence to support the decision of the immigration judge and the BIA, and I believe that there is more than enough to do that. I just asked for your reaction of what the import of that evidence was. I understand the standard of review. I'm not really sure. From the record, it's not really clear what the purpose might be. Maybe he's just, you know, everything I would say would be totally speculative. In the fact that they're still looking for him speculative? No, I'm saying that any explanation I would give of what the significance of that might be. I don't think the record explains. Are there any more questions, Your Honors? No. Thank you very much. Thank you, Counsel. Your Honor, I'm going to touch on a few points that opposing counsel made. First off, I would like to say that Mr. Chadha provided a credible testimony, and in his credible testimony he stated that the Sikh militants, the reason he was targeted for them was they lived in the U.S. and Canada, and that he was targeted because on his last trip to the U.S. he went to Canada, and he was in he came to the U.S. and he went to Canada on a trip. Secondly, the death of Win Chadha, this is where the relocation individualized analysis requirement should be done, because we don't know if with his death his case has been closed and whether or not they're still looking for the funds that were taken, smuggled, and defrauded the government. I believe it was around $50 million. So it is in that we don't know if his case has been closed yet and if they're still searching for the funds. I see that I'm out of time. May I wrap up in one sentence? Yes. Mr. Chadha respectfully submits that this case be remanded, at the very least on cap determination. The IJ clearly did not address why he was ineligible. Thank you. The case will be submitted.
judges: Kleinfeld, Thoma, Leighton